WILMERHALE

**Ari Holtzblatt**

+1 202 663 6964 (t)
+1 202 663 6363 (f)
ari.holtzblatt@wilmerhale.com

June 21, 2023

**VIA ECF**

Judge Edward M. Chen
San Francisco Courthouse
Courtroom 5 – 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Meta Platforms, Inc. v. Bright Data Ltd.*, 23-cv-00077-EMC (N.D. Cal)

Dear Judge Chen,

Plaintiff Meta Platforms, Inc. submits this letter brief regarding a discovery dispute in the above-captioned matter. Meta recognizes that the Court's Standing Order on Civil Discovery calls for a joint letter. However, Meta respectfully requests that the Court review the dispute presented in this unilateral letter given the circumstances. Meta's counsel attests that the parties met and conferred on the issue presented below on May 24, 2023, nearly a month ago. The parties confirmed impasse on these issues on June 6, 2023. Meta proposed that the parties simultaneously exchange respective letter brief inserts on June 9 for filing on June 13. Bright Data rejected that approach, so Meta sent its portion of this joint letter to Bright Data on June 14, 2023, asked Bright Data to provide its portion of the letter by June 20, 2023, and then, on June 20, offered Bright Data an extension until June 22, 2023, which is the date by which Bright Data's counsel indicated it would be able to finalize its response. Despite being prepared and able to finalize its portion of this letter within this timeframe, Bright Data has refused to do so unless Meta (1) agrees to delay filing this ripe dispute until Bright Data has prepared six of its own discovery dispute letters to file simultaneously and (2) commits to raising no additional disputes regarding early discovery. Meta told Bright Data that it would prepare and then add its own responsive inserts to Bright Data's letters after Bright Data showed them to Meta. But as of this filing, Bright Data has not sent the inserts for its own letters to Meta and has instead indicated it intends to file them without giving Meta an opportunity to see or respond to Bright Data's inserts. If Bright Data files without sending its letters to Meta, Meta respectfully requests that the Court strike the letters from the docket or allow Meta one week to respond to those letters after Bright Data's filing. Meta also seeks resolution of the already ripe disputes presented in this letter at this time, particularly given Meta's July 12 deadline to respond to Bright Data's motion for summary judgment and file any cross-motion.

Sincerely,

*/s/ Ari Holtzblatt*
Ari Holtzblatt

**Meta's Position:** Meta and Bright Data agree that this Court authorized discovery at this stage of the case encompassing, at a minimum, whether Bright Data's tools "scrape data using logged-in users." Dkt. 70. Bright Data's summary judgment motion makes the factual claims that Bright Data "only scraped when logged-off" and that it only "offers lawful, general-purpose tools," and argues on those bases that there is "no claim." Dkt. 75 at 9, 13  Meta cannot properly respond to those and other assertions in the motion unless it can test Bright Data's factual claims. Bright Data has nonetheless refused to provide meaningful discovery on these precise questions. To discover this information, Meta served the following interrogatory:

Interrogatory No. 7:  Identify All instances in which Your Scrapers or Proxies have collected or have been used to collect Data from Facebook or Instagram in a logged-in state, including for each instance when the collection occurred, the Data fields collected, the Scraper or Proxy used, and the Customer(s), if any, for whom or by whom the Data was collected. For purposes of this request, "logged-in state" means logged-in to a Facebook or Instagram account with a username and password.

Bright Data responded that it is "unaware of any instance in which it scraped Facebook or Instagram while logged-in to an Instagram or Facebook account."  But in its response, Bright Data purported to answer based only on counsel's "general understanding of [Bright Data's] business" and the "high-level" documents it planned to produce in response to Meta's document requests. Based only on that "general understanding" and the very limited set of documents that Bright Data has agreed to produce, Bright Data's counsel claims to be unaware of logged-in scraping by Bright Data and refuses to say whether he is aware of logged-in scraping by Bright Data customers. Meta promptly sought to meet and confer to understand the basis for this response, including what Bright Data had done to investigate whether its scrapers or proxies had been used to scrape logged-in data from Facebook or Instagram. Bright Data has refused to supplement that response in any way. And, Bright Data has refused to tell Meta anything about the steps it took to develop its claimed "general understanding."  Bright Data's response fails its discovery obligations in two ways.

*First*, counsel's "general understanding" and review of a limited set of documents is not a basis on which to answer an interrogatory under the Federal Rules. Bright Data has an "obligation to conduct a reasonable inquiry into the factual basis of its discovery responses," and cannot rely solely on counsel for Bright Data being "unaware" of an instance of logged-in scraping. *Nat'l Acad. Of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009); Fed. R. Civ. P. 26(g)(1) (signing attorney or party certifies response is made "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry"). Bright Data's response does not reflect the required "reasonable inquiry" because it is clear that Bright Data has not actually attempted to investigate instances in which its tools were used by Bright Data or its customers to collect data in a logged-in state. The discovery rules do not permit a party to avoid learning about and providing relevant information by declining to conduct a reasonable search that might turn up that evidence.

*Second*, Bright Data improperly limited its response to its own scraping, and refused to answer based on what the company knows about how its customers use its tools or to identify particular customers who Bright Data knows are engaging in logged-in scraping. Bright Data's self-imposed limitation improperly rewrites Meta's interrogatory and ignores Meta's claim that Bright Data breaches Meta's Terms not only through its own scraping but also by facilitating its

customers' scraping of data from Facebook and Instagram. Compl. ¶ 68. Identifying specific customers that Bright Data itself knows are scraping, or have scraped, data protected by an authentication barrier is essential to enabling Meta to properly respond to the self-serving claim in Bright Data's summary judgment motion that it does nothing more than passively "offer[] lawful, general-purpose tools" to customers who then independently use the tools to violate Meta's Terms. Dkt. 72 at 13. And identifying these customers will allow Meta to target future discovery into precisely how Bright Data facilitated those particular customers' scraping. Indeed, several of Bright Data's own 106 discovery requests to Meta similarly seek identification of those who have used Bright Data's tools to scrape data from Facebook and Instagram.

Moreover, this Court has already rejected Bright Data's argument that customer-identifying information is categorically undiscoverable and "found the Court's standard protective order for highly confidential information to be sufficient at least as the starting point for protecting Defendant's customer base." Dkt. 70. This highly relevant information should be produced, subject to a protective order that appropriately limits distribution of that information; Bright Data's insistence that these identities are "confidential" does not justify Bright Data's categorical refusal to meet its discovery obligations.

Meta respectfully requests that the Court order Bright Data to supplement its response to Interrogatory No. 7 within 14 days based on a reasonable inquiry into the facts, including information related to third-party use of Bright Data's tools and specific customers that Bright Data is aware are scraping, or have scraped, data in a logged-in state.

**Bright Data's Position:**