

Proskauer
Proskauer Rose LLP | 1001 Pennsylvania Avenue, NW | Washington, DC 20004

Colin R. Kass
202-416-6890
ckass@proskauer.com

July 5, 2023

***Via ECF***

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Meta Platforms, Inc. v. Bright Data Ltd.*, 3:23-cv-00077 (N.D. Cal.)
*Letter Concerning High-Level Documents and Exemplars.*

Dear Judge Tse:

Bright Data and Meta Platforms, Inc. respectfully submit this joint letter brief concerning a discovery dispute relating to the production of custodial emails.

Counsel for the parties attest that they met and conferred on this issue on May 24, 2023, and via subsequent written correspondence.

Respectfully submitted,

/s/ Colin Kass

### *A. Bright Data's Position Regarding High-Level Documents and Exemplars.*

At the Case Management Conference, the Court ordered the parties to "stage" discovery in a "limited and phased" way to "get some ***high-level documents***" directed to "this motion to dismiss on the contract claim," so that "each side hasn't spent $2 million by the time" the Court resolves the parties' early dispositive motions. CMC Tr. at 3, 17; ECF 70. Bright Data complied by proposing to produce high-level documents, including exemplar marketing documents, source code, crawl scripts, contracts, and data sets. While Bright Data excluded custodial email searches as disproportional for Phase 1 discovery, the information it proposes to produce would be sufficient to show whether Bright Data engages in, or facilitates, the logged-on search of Facebook or Instagram. Meta has not identified any particular deficiencies in Bright Data's extensive offer.

During the parties' meet and confer, Meta objected, insisting on an "all documents" search for various categories of information. But in its discovery dispute letter (ECF 90), Meta appeared to backtrack. It said, "*where appropriate*," it was limiting "its requests at this stage to documents 'sufficient to show' specific, threshold information." This vague limitation, however, left Bright Data guessing as to what additional information Meta seeks. Bright Data's concerns were well-founded. In response to this letter, Meta now asks the Court to require email searches for RFPs 6 and 11 (and potentially others), which was not addressed in Meta's prior discovery letters. This demonstrates the danger of piecemeal litigation over the scope of Phase 1 discovery.[1]

With respect to RFPs 6 and 11, Meta has not shown that it needs email searches ***as part of Phase 1 discovery***. These requests seek communications about Meta's Terms and customer use of Facebook or Instagram. This information is not relevant – in even the slightest – to Bright Data's motion for summary judgment, which focuses on questions of contract formation and interpretation. Meta makes four arguments for relevance, all mistaken.

*First*, Meta argues Bright Data's "understanding" of the Terms is relevant to the legal question of whether the Terms apply to public search. But Meta forgets that its Terms are "take it or leave it" contracts of adhesion. It is "settled" and "an axiom of contract law" that "when there is a standardized agreement … the agreement is interpreted … ***without regard to [the parties'] knowledge or understanding***…." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 638 (N.D. Cal. 2021) (citing Rest 2d. Contracts § 211). As the Restatement provides, "courts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it," not the understanding of any particular party. Rest. 2d § 211.

Thus, Bright Data simply applied the applicable ***objective*** legal standard in arguing "no person signing up" for a Facebook or Instagram account would reasonably believe that the Terms "apply to public web search." ECF 75 at 19. Meta does not deny this. Instead, it argues that though such parol evidence is inadmissible, it might still be discoverable.[2] But where, as here,

---

[1] Meta's footnote about RFPs 2 and 16 refers to the Court to the parties' separate letter, ECF 90. We do the same. Suffice it to say, RFPs 2 and 16 do not seek emails. As to exemplars, it is unclear where Meta came up with the idea that Bright Data intended to only produce information relating to some, but not all, of the relevant scraping tools. But this Court should not make discovery rulings based on figments of Meta's imagination.

[2] Meta's cases are inapposite. In *GBTI*, discovery was needed to resolve an ambiguity, but it was not a contract of adhesion, in which ambiguities are resolved against the drafter and parol evidence is irrelevant. In *hiQ v. LinkedIn*, the court ***rejected*** the use of parol evidence in interpreting the contract, noting "[t]he threshold issue of whether the

"interpretation of a [standardized] contract is a question of law, not fact," discovery is denied. *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241 (C.D. Cal. 2003) (denying Rule 56(f) request for discovery); *Zurich Am. Ins. Co. v. Wm. Bolthouse Farms, Inc.*, 2021 WL 4493532, *7 (E.D. Cal. 2021) (in interpreting a contract, "the motion for judgment on the pleadings may be determined without any additional discovery…."); *Smith v. CPC Int'l, Inc.*, 1998 WL 85863, *3 (S.D.N.Y. 1998) (denying discovery where it "at best would yield extrinsic proof irrelevant to the Court's contract interpretation," "barred by the parol evidence rule," and thus, "futile").

*Second*, Meta argues that it needs discovery to show Bright Data's "knowledge" of third parties' use of its service. But Bright Data is not seeking summary judgment on Meta's facilitation claim based on any lack of knowledge. It seeks summary judgment based on the legal definition of "facilitation," and whether it should be construed consistent with *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1226 (2023). ECF 75 at 28-29. In *Twitter*, the Court accepted as true the allegation that Twitter *knew* its services were used by ISIS, but it still affirmed 12(b)(6) dismissal because the concept of inducement does not extend to merely making a lawful service available to those who may misuse it. 143 S. Ct. at 1225-26 ("The mere creation of those platforms … is not culpable. To be sure, it might be that bad actors like ISIS are able to use platforms like defendants' for illegal – and sometimes terrible – ends. But the same could be said of cell phones…); *see also* ECF 73 (summarizing *Twitter*). No discovery is needed to determine whether *Twitter* applies to a contractual "facilitation" claim in the same way it applies to an "aiding and abetting" tort claim.[3]

*Third*, Meta says Bright Data's knowledge of Meta's Terms is relevant to contract formation, because it wants evidence that Bright Data is "aware" of Meta's terms. But this suffers from the same flaw. Bright Data is not seeking summary judgment based on lack of knowledge. Our position is that knowledge is irrelevant because of Bright Data's express rejection. Even if that rejection did not presuppose knowledge, Bright Data has expressly admitted that it "was aware of the Facebook [and Instagram] Terms of Service as of January 6, 2023." ECF 90-7. Meta does not deny this. So, its argument that it needs discovery of Bright Data's awareness is nonsense.

*Fourth*, Meta says email searches are required to rebut Bright Data's argument that Meta's attempt "to create a lifetime ban" on public web search "would certainly surprise most people." ECF 75 at 27. But this again simply states the legal standard applicable to contracts of adhesion. It is an ***objective*** test, not a subjective one, and it is decided as a matter of law. Meta's procedural-unconscionability cases are not to the contrary, as none ordered or considered discovery on this issue beyond the contract itself. Meta also ignores *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022), finding Meta's Terms procedurally unconscionable because Meta offered the terms on a take-it-or-leave-it basis, with no power to negotiate. That is enough to meet the procedural element of unconscionability. But even if subjective intent governed (it doesn't), Meta is wrong that "lack of knowledge" is the only basis to assert procedural unconscionability. As noted above, Bright Data's motion is ***not*** based on lack of knowledge of the Terms, so discovery is not needed to decide this issue, particularly in Phase 1.

---

parol evidence is necessary to determine the meaning of the language is a question of law." 2022 WL 18399982, *6. ***Meta doesn't address that threshold question.***

[3] Meta references jurisdictional discovery, but that issue is neither ripe nor relevant to the scope of Phase 1 discovery directed to Bright Data's summary judgment motion.

We have now addressed five of the eight discovery requests Meta has "prioritized" (RFPs 2, 6, 11, and 16, and Interrogatory 3). It is not clear that Meta is seeking email searches with respect to the other prioritized requests or any other that Meta may later try to include in Phase 1. If it is not seeking any additional discovery beyond these requests, then perhaps the above will resolve the parties' dispute on this score. But if Meta is seeking any additional Phase 1 discovery, this Court should limit it to high-level documents and exemplars that do not require custodial email searches, absent further order of the Court.[4]

This approach allows Meta to ask for such a search if the need arises, but would not make such searches presumptively required during Phase 1. This is consistent with Judge Chen's directive to focus on "high level documents" and avoid the need to spend millions of dollars on discovery until the threshold issues of contract formation and interpretation have been decided.[5]

---

[4] Meta asks for an order "direct[ing] Bright Data to produce documents and information identified by Meta's RFPs 6 and 11, as written and narrowed in Meta's May 30 letter." But Meta has not moved to compel production on anything other than RFPs 2, 16, and Interrogatory 7. Nor has it identified any deficiency with Bright Data's offer of production. It would be improper for this Court to wholesale overrule all of Bright Data's objections to those requests.

[5] Meta complains that Bright Data has not done enough to establish the burden of searching emails at this stage. But Meta already lost that fight, when the Court ordered phased discovery. Meta does not deny that email searches cost millions of dollars. While Judge Chen did not expressly foreclose the possibility of email searches (though he implicitly did so by asking the parties to focus on "high level documents" and to avoid spending millions of dollars at this stage), Meta must show it needs such a search ***at this stage*** and can't wait a few months more.

***B. Meta's Position.*** Bright Data's letter demonstrates the inefficiency in raising abstract issues divorced from specific discovery requests. Bright Data appears to ask for a protective order (1) granting Bright Data the right to produce only "high-level" or "exemplar" documents it has unilaterally decided are relevant—rather than documents sufficient to show—and (2) prohibiting Meta from discovering email communications in early discovery. That is not how discovery works, and its request should be denied. Following the Court's directive to focus early discovery on "core issues," Meta proposed initially prioritizing eight foundational requests, limiting many to documents "sufficient to show." Contrary to Bright Data's accusations that Meta has "backtrack[ed]" or been "vague" about the limitations it will agree to, Meta detailed its compromises during the parties' meet and confer and in its May 30 letter. Dkt. 90-1. Meta limited specific requests to "exclude email communications," *id*. at 4 (RFP 2 & 16),[6] but noted that communications were necessary for other requests, id. at 6 (RFP 6 & 11). Meta has narrowed RFPs 6 and 11 requests to seek:

**RFP 6:** (1) Documents sufficient to show each unique representation Bright Data has made about its compliance with the Facebook and Instagram Terms in marketing materials; (2) All Documents or Communications containing any statements that Bright Data has made to any customer outside of marketing materials, including in response to any customer inquiry, regarding compliance with the Facebook and Instagram Terms; and (3) Documents sufficient to show any internal assessment of Bright Data's compliance with the Facebook and Instagram Terms.

**RFP 11:** Documents sufficient to show Bright Data's knowledge of its customers' use of Facebook and Instagram, including Bright Data's knowledge of both how specific customers use Bright Data tools and services to collect data from, or otherwise access Facebook and Instagram, and any accounts or pages that Bright Data's customers have maintained on Facebook or Instagram.

These requests seek highly relevant information related to Bright Data's compliance with Meta's Terms, scraping by its customers of Facebook and Instagram data, its customers' use of Facebook and Instagram, and Bright Data's knowledge of such. Bright Data does not dispute that the requested information is "most likely to be found in emails or messaging systems." Dkt. 90-1, Ex. A, at 7. Given that Bright Data does not dispute that Meta's requests entail communications, its objection is not simply an objection to producing custodial emails, but rather an objection to producing information in response to these requests at all in early discovery.

Bright Data's categorical refusal to produce these documents is inappropriate because the information sought by RFPs 6 and 11 is relevant to at least four issues squarely raised by Bright Data's early motion for summary judgment. *First*, RFPs 6 and 11 go directly to Meta's claim that Bright Data breaches its contract by facilitating its customers' scraping of data from Facebook and Instagram. Bright Data has moved for summary judgment against Meta's breach-by-facilitation claim on the ground that it does not "***knowingly*** induce[] … or encourage[]" its customers to breach their contracts with Meta. Dkt. 75 at 28 (emphasis added). Bright Data inaccurately claims this is

---

[6] As detailed in its portion of the discovery letter, Dkt. 90, Bright Data's limitations to RFPs 2 and 16 to "high-level" or "exemplar" documents are improper. Bright Data still refuses to commit to produce any of the technical documents used by its engineers and it *still* refuses to commit to producing information about "each" of its tools. *See supra* at Bright Data n.1. Producing documents "sufficient to show" is "not [to] be used as an opportunity to produce only documents favorable to one position while withholding unfavorable documents." 23 Sedona Conf. J. 331, 372 (2022).

only a legal argument about how to interpret the Terms. Not so. To prevail in its motion, Bright Data would need to demonstrate not only that the Terms prohibit only knowing inducement; it would ***also*** need to establish as an undisputed fact that it did and does not "***knowingly*** induce[]" Facebook and Instagram users "to violate their contracts with Meta." *Id*. Bright Data has thus put its knowledge of its customers' scraping and its customers' contracts with Meta directly at issue.[7]

*Second*, this discovery bears on Bright Data's summary judgment argument that Meta's Terms are procedurally unconscionable because they purportedly "would … surprise most people." Dkt. 75 at 27. Bright Data completely ignores Ninth Circuit precedent in contending that discovery—that is, facts—are "not needed" to assess surprise; procedural unconscionability focuses on "the respective circumstances of the parties." *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 922 (9th Cir. 2013). A critical factor in evaluating procedural unconscionability, including for a contract of adhesion, is whether the party asserting unconscionability was subjectively aware of the provision at issue. For example, in *Loewen v. Lyft, Inc*., 129 F. Supp. 3d 945, 955-57 (N.D. Cal. 2015), the Court determined that the plaintiffs could not "claim surprise with respect to the delegation clause" in an "adhesion contract," after considering evidence that the plaintiffs had the opportunity to read the terms, which were displayed on the screen, prior to assenting. And in *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016), the Court considered that "there was no element of surprise" in an adhesion contract where the plaintiff "not only knew about the [relevant contractual provision], but initially sought to avoid it." Because the plaintiff subjectively knew of the provision, the Court did "not subject the contract to the same degree of scrutiny" as adhesion contracts involving "surprise." *Id*. In the case it cites, Bright Data omits that the Court evaluated procedural unconscionability "*as applied*" to the contracting party. *Meta Platforms, Inc. v. BrandTotal Ltd*., 605 F. Supp. 3d 1218, 1254 (N.D. Cal. 2022). Bright Data is wrong that procedural unconscionability is a pure legal question; to prevail on this issue, Bright Data must show the degree of procedural unconscionability under the particular circumstances of this case, so Meta's requested discovery thus bears directly on yet another of Bright Data's summary judgment claims.

*Third*, Bright Data moves for summary judgment, arguing that "no person signing up" for a Facebook or Instagram account would reasonably believe that the Terms "apply to public web search." Dkt. 75 at 19. Communications regarding Bright Data's understanding of those Terms are relevant to that interpretation question. Bright Data is wrong that Meta is not entitled to this discovery because of the parol evidence rule for two reasons. *First*, "the test for discovery is not admissibility, but whether relevant evidence appears reasonably calculated to lead to the discovery of admissible evidence. … At the discovery stage, the Court does not decide whether parol evidence will or will not be admitted to address interpretation of the Terms." G*BTI, Inc. v. Ins. Co. of State of Pa*., 2010 WL 2942631, at *4 (E.D. Cal. July 23, 2010). Citing *Heighley*, Bright Data attempts to import the Rule 56(f) standard; but that is not the test for whether discovery is relevant, Rule 26 is. *Second*, Bright Data is incorrect that extrinsic evidence is categorically inadmissible. In considering a similar online user agreement—and holding that a data scraper had breached that agreement—this Court applied California law to consider whether to admit parol evidence, noting that "extrinsic evidence ***may*** be required to determine the intent of parties to a contract." *hiQ Labs,*

[7] This discovery is separately relevant to ongoing jurisdictional discovery, which involves whether Bright Data targeted California customers, "including those who have Facebook or Instagram accounts." Dkt. 76

*Inc. v. LinkedIn Corp.*, 2022 WL 18399982, at *6 (Nov. 4, 2022) (emphasis added). To decide whether to admit parol evidence, "the court provisionally receives … ***all*** credible evidence concerning the parties' intentions" and "[i]f in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' … the extrinsic evidence is admitted." *Id.* at *6 (emphasis added). Although the Court determined there that the extrinsic evidence was not admissible, the test it set forth and applied demonstrates that it is sometimes admissible for interpreting online user agreements like the one here and thus it is necessarily ***discoverable***, which is the actual "threshold issue" presented here.

*Fourth*, Bright Data's knowledge of the terms—including its assessment of its compliance with those Terms—goes directly to contract formation. Meta maintains that Bright Data continues to be bound by Meta's Terms following the termination of its accounts because it continues to access the platforms with actual knowledge of the Terms. *See Register.com v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). Bright Data cannot evade this discovery by claiming that it is "not seeking summary judgment based on lack of knowledge." Bright Data does not deny that such discovery is relevant to one of the grounds on which Meta seeks to establish contract formation. And Bright Data notably does not unequivocally disclaim ever challenging contract formation based on purported lack of knowledge, for example, in response to any potential cross-motion.[8]

Finally, Bright Data cannot evade discovery of communications with unsubstantiated attorney argument that such discovery would cost "millions of dollars." Bright Data bears the burden under Rule 26(c) of demonstrating harm or prejudice with "specific demonstrations of fact, supported where possible by affidavits and concrete examples … ." *Avaya Inc. v. Pearce*, 2020 WL 8513514, at *1 (N.D. Cal. Dec. 22, 2020). But it offers nothing. Meta respectfully requests that the Court order Bright Data to produce documents, including email, requested by RFPs 6 and 11, as narrowed by Meta. Dkt. 90-1. Meta has addressed Bright Data's only other objection to these RFPs in Bright Data's letter regarding customer-identifiable information.

---

[8] Briefing on Bright Data's motion for summary judgment and any cross-motion is still ongoing and is scheduled to be complete in September. Because, at this stage, Meta does not know to what extent Bright Data will dispute certain relevant facts, Meta is entitled to this relevant discovery—which relates directly to Bright Data's motion—now.